IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HEATHER CONRAD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | Judge |
| ORLAND SCHOOL DISTRICT 135, | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Heather Conrad, by her attorneys, Potter Bolaños LLC, complains of Defendant Orland School District 135 as follows:

### Nature of the Action

1. Plaintiff Heather Conrad brings this action against her employer Orland School District 135 for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

2. Defendant denied Heather Conrad a promotion to Principal and removed her from her Assistant Principal position because of her sex, female, and in retaliation for rejecting the unwanted advances of Defendant's Superintendent.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 because Defendant resides in this District and the events giving rise to this suit occurred in this District.

**The Parties**

5. Plaintiff Heather Conrad ("Dr. Conrad") resides in Illinois and has been an employee of Orland School District 135 since 2001. Her current position is teacher.

6. Defendant Orland School District 135 (the "District") is an educational employer which maintains a public school system in Orland Park, Illinois. Its principal place of business is 15100 S. 94th Avenue, Orland Park, Illinois. The District employs more than 725 employees.

**Administrative Procedure**

7. Dr. Conrad timely filed a charge for sex discrimination and retaliation against Orland School District 135 with the Equal Employment Opportunity Commission ("EEOC") on September 8, 2017. She received a Notice of Right to Sue from the EEOC on or after December 3, 2017. Plaintiff has satisfied all conditions precedent to pursuing her Title VII claims.

**Relevant Facts**

8. The District hired Dr. Conrad in 2001 as a teacher. She taught math, language arts, and honors classes and special education clusters.

9. The District promoted Dr. Conrad to Assistant Principal in 2006.

10. Throughout her employment, Dr. Conrad has performed the duties and responsibilities of her position in a satisfactory manner and met and often exceeded all legitimate expectations. She was, and is, well-liked by colleagues, students, and parents.

11. After the District promoted her to Assistant Principal, Dr. Conrad began a doctorate program, with the goal to become a Principal after she received her Doctorate in Education. The District paid the tuition for her coursework even after the District capped tuition reimbursement.

12. Dr. Conrad received her Doctorate in Education (Ed.D.) in December 2015.

13. Around March 2016, Dr. Conrad told Superintendent DJ Skogsberg ("Skogsberg"), a male, that she was interested in becoming a principal. At the time, the District had recently appointed Skogsberg to serve as the Superintendent starting in the 2016-2017 school year.

14. Superintendent Skogsberg is the highest ranking employee of the District. Skogsberg has managed and exercised managerial authority over Dr. Conrad and other District employees, including authority to hire, fire, promote, demote, and affect the terms and conditions of the employees' employment.

15. At an Administrative Council meeting in August or September 2016, at the beginning of the 2016-2017 school year, Superintendent Skogsberg approached Dr. Conrad, sat down next to her, and said, "We need to go out." Dr. Conrad was taken aback and exclaimed "what?"; then before she could respond further, the meeting began.

16. On Friday night, October 14, 2016, at 10:44 p.m., Superintendent Skogsberg called Dr. Conrad while she was at home and kept her on the phone for almost an hour.

17. During that call, Superintendent Skogsberg told Dr. Conrad that he wanted to discuss candidates that Dr. Conrad had interviewed for a paraprofessional position. However, after a few minutes, he started repeating her name, "Heather," over and over again. This was unusual because he did not address Dr. Conrad by her first name at work. He then said, "Don't worry"; "I love you"; "I'll take care of you"; "Let's meet out"; and "Let's get together." For the rest of the call, he kept repeating her name and he went back and forth between talking about the job candidates and telling her "I love you" and "I'll take care of you" and asking her to meet up with him.

18. Dr. Conrad repeatedly told Superintendent Skogsberg "this is not appropriate" and rejected his requests to meet outside of school.

19. Dr. Conrad applied for the position of Principal of Orland Junior High School on November 6, 2016, a position for which she was well-qualified.

20. On or about November 14, 2016, Dr. Conrad interviewed for that position with Superintendent Skogsberg, Assistant Superintendent Lynn Zeder, and Assistant Superintendent of Human Resources John Bryk.

21. On November 16, 2016, Assistant Superintendent Bryk informed Dr. Conrad that she did not get the Principal position. He stated that she did a great job at her interview, was well-prepared, and had done her research on the school, but that "unfortunately it all comes down to one man's decision." She understood that he was referring to Superintendent Skogsberg.

22. Superintendent Skogsberg selected and recommended the hiring of a male candidate for the Principal position.

23. At the December 2016 Board meeting, the Board approved the appointment of the male candidate that Skogsberg selected as Principal of Orland Junior High starting July 1, 2017.

24. After the December 2016 Board meeting, Dr. Conrad heard people talking about the male who was appointed and saying that he had been a principal at another school district, that he had been removed from his building for some kind of financial impropriety, and that he had been removed from his position as principal there.

25. After the male candidate was appointed to the principal position, Dr. Conrad asked Superintendent Skogsberg, "What do you have to do to get a principal job here?" He responded, "**Maybe be a different gender**."

26. On Wednesday afternoon, March 8, 2017, Dr. Conrad was summoned to an urgent meeting at the Superintendent's office. Superintendent Skogsberg and Assistant Superintendent Zeder were present when she arrived.

27. Superintendent Skogsberg stated that Dr. Conrad would not be returning as assistant principal for the next school year and that her contract would not be renewed. He told her that she had to resign or her termination would be announced publicly at the Board meeting on Monday, March 13; that her options were to resign and leave the district, resign and accept a demotion to a teaching position, or be terminated. Skogsberg warned her that she had to decide by noon on Friday, March 10 noon or else "we'll let you go."

28. Superintendent Skogsberg and Assistant Superintendent Zeder gave Dr. Conrad no reason for removing her from her assistant principal position. However, during this meeting, Superintendent Skogsberg stated that he and the Assistant Superintendent would write her "glowing letters of recommendation."

29. During that meeting, Superintendent Skogsberg ordered Dr. Conrad to tell her staff that it was her choice to leave her position, when in fact leaving her position as assistant principal to be demoted to teacher was not her choice at all. He warned her that he did not want it to come back to him that he forced her to do anything.

30. The next day, Dr. Conrad informed Assistant Superintendent of Human Resources John Bryk that she was being forced to resign. He told her that she should say nothing to anyone about what happened, put her resignation in writing, and that she was to emphasize that this was her decision. He stated that she was guaranteed a teaching job because she had tenure.

31. Assistant Superintendent of Human Resources John Bryk told Dr. Conrad what to write in her letter to the Superintendent. In her email to Superintendent Skogsberg about her forced resignation, Dr. Conrad used the wording Assistant Superintendent Bryk gave her.

32. During the next week or two, Dr. Conrad informed the staff at her school that she would not be returning as Assistant Principal next year, and in light of the options she was given, she believed that her best option was to return to teaching.

33. The next day, Superintendent Skogsberg called Dr. Conrad and demanded to know, in an angry and accusatory voice, "what are you telling people?" He said that he was hearing two different stories and he ordered her "to get the story straight."

34. Assistant Superintendent Zeder called Dr. Conrad's immediate supervisor, the Principal at her school, and demanded to know what Dr. Conrad's "story" was and what Dr. Conrad was telling people.

35. Dr. Conrad was terminated from her position as Assistant Principal effective June 30, 2017.

36. Dr. Conrad was never given any reason for why she was removed from her Assistant Principal position. Superintendent Skogsberg refused to give her a reason when she asked.

37. Less than a month before Superintendent Skogsberg removed Dr. Conrad from her Assistant Principal position, she received a performance rating at the top end of "proficient" and just below "excellent," the two highest ratings an assistant principal could earn.

38. Just five days after Dr. Conrad was removed from her assistant principal position, Assistant Superintendent Zeder wrote that Dr. Conrad "is ready to assume the role of principal."

39. Because she has tenure, Dr. Conrad returned to a teaching position in August 2017. In her current position, she has no administrative authority and earns significantly less salary and fewer benefits.

## Count I
## Title VII Sex Discrimination

40. At all relevant times herein, Defendant employed more than 15 people and is therefore an employer as defined by 42 U.S.C. § 2000e(b).

41. Defendant is engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(h).

42. Defendant intentionally subjected Plaintiff to unequal and discriminatory treatment by denying her a promotion to the position of Principal and terminating her from her position as Assistant Principal, all in violation of 42 U.S.C. §2000e-2.

43. Defendant discriminated against Plaintiff with malice and/or reckless indifference to her federally protected rights.

44. Defendant's actions in intentionally discriminating against Plaintiff has caused her emotional distress, humiliation, career derailment, anxiety, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other compensatory and consequential damages.

**WHEREFORE**, Plaintiff prays this Court to enter judgment on her behalf and against Defendant Orland School District 135:

    A.    All wages and benefits Plaintiff would have received but for the unlawful employment practices, including pre-judgment interest as permitted by law;

    B.    Promotion to the position of Principal, or in lieu of promotion, an order of front pay and benefits for a reasonable period of time;

C.     Reinstatement to her former position as Assistant Principal, or in lieu of reinstatement, an order of front pay and benefits for a reasonable period of time;

D.     Compensatory damages;

E.     Attorneys' fees and costs;

F.     Post-judgment interest; and

G.     Such other and further relief as the Court deems appropriate.

## COUNT II
## Title VII Retaliation

45.     Plaintiff restates and realleges by reference paragraphs 1 through 44 above as though fully set forth in this Count.

46.     Defendant retaliated against Plaintiff for having engaged in protected activity, *i.e.*, opposing unlawful discrimination by rebuffing the Superintendent's advances, in violation of 42 U.S.C. §2000e-3.

47.     Defendant retaliated against Plaintiff with malice and/or reckless indifference to her federally protected rights.

48.     Defendant's actions in intentionally retaliating against Plaintiff caused her emotional distress, humiliation, career derailment, anxiety, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other compensatory and consequential damages.

**WHEREFORE**, Plaintiff prays this Court to enter judgment on her behalf and against Defendant Orland School District 135:

A.     All wages and benefits Plaintiff would have received but for the unlawful employment practices, including pre-judgment interest as permitted by law;

B.     Promotion to the position of Principal, or in lieu of promotion, an order of front pay and benefits for a reasonable period of time;

C. Reinstatement to her former position as Assistant Principal, or in lieu of reinstatement, an order of front pay and benefits for a reasonable period of time;

D. Compensatory damages;

E. Attorneys' fees and costs;

F. Post-judgment interest; and

G. Such other and further relief as the Court deems appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL**

Respectfully submitted,

/s/ Alenna K. Bolin
Attorneys for Plaintiff

Robin Potter, Esq.
M. Nieves Bolaños, Esq.
Alenna K. Bolin, Esq.
POTTER BOLAÑOS LLC
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
312-861-1800
robin@potterlaw.org
nieves@potterlaw.org
alenna@potterlaw.org

Dated: March 2, 2018